UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KIM BARTON

VERSUS

G.E.C., INC.

CIVIL ACTION

NO. 09-1123-JJB

**<u>RULING</u>**

This matter is before the Court on a motion (doc. 16) for summary judgment filed by defendant G.E.C., Inc. (G.E.C.). Plaintiff Kim Barton has filed an opposition (doc. 20). Defendant G.E.C. Inc. has filed a reply (doc. 25). Oral argument is not necessary.

Plaintiff, Kim Barton, has filed suit seeking damages for wrongful termination. Plaintiff's complaint contains four causes of action. Under federal law, plaintiff alleges her firing violated the retaliation provision of the Family and Medical Leave Act (FMLA) and the sex and pregnancy discrimination provision of Title VII of the Civil Rights Act. She also alleges the state law torts of Intentional Infliction of Emotional Distress (IIED) and Abuse of Rights. Defendant seeks summary judgment to dismiss all claims.

The facts, briefly, are as follows. G.E.C. hired Barton in July 2007 as an at-will employee to work in the environmental division. She eventually moved to marketing duties in the energy services field. In February 2008, Barton became pregnant through artificial insemination. Her supervisors appear to have learned

1

of her pregnancy in the summer of 2008. Barton requested FMLA leave in early September 2008 through interoffice mail to Nancy Moeller in human resources and Mr. Hinton, her immediate supervisor. G.E.C. terminated her employment on October 3, 2008, approximately three and a half weeks after she requested pregnancy leave and five weeks before giving birth to her child. Her FMLA request was never processed.

The defendant's displeasure with plaintiff's work performance, especially her purported inability to generate revenue, was well-documented before the plaintiff's pregnancy became known to G.E.C. supervisors in the summer of 2008. Upon hiring, plaintiff was initially assigned to the environmental division on a customary six month probation after which time the company would review her performance and decide on continued employment. In this capacity, she was expected to generate revenue and contribute to the bottom-line by bringing in outside projects.[1] She appears to have been less than successful, bringing in only one project worth $15,000 in her first six months. It is undisputed that this was the only revenue she generated for the company during the entire period of her employment. Plaintiff's supervisor in the environmental division, Mr. Carter,

---

[1] The company charges the environmental division with responsibility for controlling its own separate overhead, including labor costs, to meet certain profit goals. As a result, employees are expected to carry their weight by generating enough revenue to exceed their salaries.

who defendant contends had no role in her termination, recommended her dismissal at the end of the probationary period.[2]

However, in early 2008, Mr. Arman decided to extend her probationary period for another ninety days. In plaintiff's performance review, he warned her that "if [her] performance has not improved, her employment will be terminated" (doc. 16-1, p. 3). After her work product failed to improve, plaintiff was transferred to the marketing department under Mr. Hinton in hopes that she would be a better fit in that capacity. On the transfer notice, Mr. Arman wrote, "your evaluation will be based on your productivity in terms of acquisition of substantial number of new projects and clients" (doc. 16-1, p.4). She was given another six month probationary period. G.E.C. still expected plaintiff to bring in business in her new role. It is undisputed that she did not bring in any paying projects, but plaintiff claims that success in her new role did not completely depend on revenues and that her work still benefitted the company.[3] Her termination occurred toward the end of the third probationary period.

Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there

---

[2] Mr. Carter rated her "unsatisfactory" in two areas out of thirteen in her performance review: job knowledge and quantity of work (doc. 20-6, p. 7).

[3] Plaintiff claims to have done widespread marketing and networking activities and completed billable hours on other projects. More significantly, she claims to have invested significant time on a Fort Worth project, which she claims had the potential to be a multi-million dollar contract for G.E.C. The project never came to fruition. Defendant disputes the viability of this project from the beginning. It also asserts the project fell outside plaintiff's assigned work duties in pipeline marketing, which she did not enjoy doing.

is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial rests on the non-movant, the movant need only demonstrate that the record lacks sufficient evidentiary support for the non-movant's case. *See id.* The movant may do so by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-movant's case. *Id.*

Although the court considers any disputed or unsettled facts in the light most favorable to the plaintiff, the plaintiff may not merely rest on allegations set forth in the pleadings. Instead, plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy a plaintiff's burden. *See Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). If, once a plaintiff has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the plaintiff, summary judgment will be granted. *See Celotex,* 477 U.S. at 322; *see also* Fed. Rule Civ. P. 56(c).

<u>FMLA RETALIATION</u>

Plaintiff claims that her discharge violated FMLA, which creates a cause of action for pregnancy-leave retaliation. 29 U.S.C. § 2615(a)(1). As recognized by both parties, FMLA retaliation claims are generally analyzed under the burden-

shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Hunt v. Rapides Healthcare Sys., Inc.*, 277 F.3d 757, 768 (5th Cir. 2001). Under FMLA, the employee must first make a prima facie showing that (1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge. *Id.*

Factors to be considered in determining a causal link are the employee's past disciplinary record, whether the employer followed its typical policies and procedures when taking adverse action against the employee, and the temporal relationship between the employee's conduct and the adverse action. *Nowlin v. RTC*, 33 F.3d 498, 507-08 (5th Cir. 1994). If there is no other evidence of causation, the temporal proximity between the FMLA request and the termination must be "very close" for plaintiff to prevail in a prima facie showing. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing *O'Neal v. Ferguson Construction Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). Furthermore, evidence that an employer had been concerned about the employee's job performance before the FMLA leave undercuts the temporal proximity element. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002).

The purpose of the prima facie showing is to create an "inference of discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981). The burden then shifts to the employer to provide a legitimate, non-discriminatory reason for the discharge. In turn, the employee must show that

5

proffered reason to be a pretext.[4] The rule in the Fifth Circuit is that a plaintiff who brings a retaliation claims must show that the adverse employment action would not have occurred "but for" the retaliatory motive. *Strong v. Univ. Health Sys., LLC*, 482 F.3d 802, 806 (5th Cir. 2007).

Defendant primarily disputes the causation and pretext elements of plaintiff's FMLA retaliation claim. Defendant contends that plaintiff's only evidence of causation is the 3.5 week period between her request for pregnancy leave and her discharge, which it argues is not enough to suggest any impropriety in the absence of other evidence of illicit motive. Defendant asserts that plaintiff lost her job only due to ongoing poor job performance. Plaintiff points out the fact that she never heard back from human resources regarding her FMLA request nearly a month before being fired—inaction she claims constituted a breach of company policy and procedure regarding pregnancy-leave claims processing.

---

[4] Significantly, while assuming the propriety of a *McDonnell Douglas* approach, defendant correctly argues that retaliation needs to be only one motivating reason for the termination (doc. 20-6, p. 24). This possibly implicates the mixed-motive analysis, which is a slight variation from the traditional *McDonnell Douglas* burden shifting framework. In *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327 (5th Cir. 2005), the Fifth Circuit, following the U.S. Supreme Court's decision in *Desert Palace. Inc. v. Costa*, 539 U.S. 90 (2003), held that the mixed-motive analysis applies to FMLA retaliation claims when the "employee concedes that discrimination was not the sole reason for her discharge, but argues that discrimination was *a* motivating factor in her termination." *Id.* at 333. Under this approach, the employee may use circumstantial evidence to show the employer's termination decision was a mixture of legitimate and illegitimate motives. As a result, the employer must demonstrate that it would have terminated the employee in the absence of the impermissible motivating factor. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309-10 (5th Cir. 2004) (citing *Louis v. E. Baton Rouge Parish Sch. Bd.*, 303 F.Supp.2d 799, 801-04 (M.D. La. 2003)). The use of either method of analysis—*McDonnell Douglas* or mixed-motive—does not change the result in this case, as defendant has met its burden under either analysis.

G.E.C.'s Family Medical Leave policy requires that employers must inform employees requesting leave whether they are eligible under FMLA and, if so, the amount of leave allowed. G.E.C. also had forms with the headings "FML Approved Notification" and "Employee's FMLA Rights Notification," neither of which were used in plaintiff's case. It was the job of Ms. Moeller in human resources to process such requests. The testimony did not establish a general timeline for processing requests. However, Ms. Moeller admitted that that she did not process plaintiff's request because plaintiff was terminated (doc. 20-6, p. 12-13). In short, the close temporal proximity, together with the court's finding that G.E.C. failed to timely process plaintiff's FMLA request, could be considered sufficient evidence of causation to satisfy plaintiff's prima facie burden.

Nonetheless, the court finds that plaintiff has failed to carry her burden regarding the pretext prong of the *McDonnell Douglas* test. Plaintiff has failed to sufficiently dispute the defendant's proffered non-retaliatory reasons for plaintiff's termination. Plaintiff has produced no evidence that G.E.C. disfavored pregnancy-leave in general or her application for pregnancy-leave in particular. In fact, during plaintiff's tenure at the company, three female employees applied for and were granted FMLA requests for this purpose. The evidence shows G.E.C. supervisors had deep concerns with plaintiff's lack of productivity and ability to work well with others in her department well before her request. Mr. Carter, the head of the environmental division, recommended her termination after the first

7

six months at the company due to the fact that she was not producing revenue and contributing to his division's bottom-line. Furthermore, Mr. Arman put plaintiff on second and third probationary periods to allow time for her work to improve. Mr. Arman also seems to have been displeased with plaintiff's conduct surrounding a meeting in early September 2009, which caused Mr. Arman not to want to work with plaintiff anymore.[5] The foregoing facts significantly undercut plaintiff's retaliation claim, and plaintiff has not met her burden to show that G.E.C.'s asserted reasons for terminating plaintiff were a pretext for retaliation. As such, summary judgment dismissing plaintiff's FMLA retaliation claim is appropriate.

TITLE VII

Plaintiff also alleges her discharge violated Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act to include pregnancy discrimination. The same *McDonnell Douglas* burden-shifting framework used under FMLA is appropriate. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219-20 (5th Cir. 2001). In a Title VII context, the employee's prima facie showing must include that (1) she was a member of a protected class, (2) she was

---

[5] In early September 2008, approximately one month before the plaintiff's termination, there was a meeting at G.E.C. offices with an outside attorney, Mr Hardy, to discuss marketing opportunities in the pipeline field. Defendant alleges Mr. Arman instructed plaintiff to prepare a brochure for Mr. Hardy prior to the meeting and that she failed to do so. Mr. Arman testified that, after this incident, he did not want to work with plaintiff any more. (doc. 16-1, p. 7-8). Plaintiff disputes that this request was ever made. Nevertheless, after the meeting, Mr. Arman instructed employees via email not to contact Mr. Hardy. It is undisputed that plaintiff attempted to contact him, although she claims it was before that instruction was given and she made no further attempts (doc. 20-7, p. 8-9).

qualified for the position, (3) she was dismissed or otherwise suffered an adverse employment action, and (4) she was either replaced with someone outside the protected class or a "similarly situated" employee outside the protected class was treated more favorably. *Lee v. Kansas City South Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009); *Ward v. Bechtel Corp.*, 102 F.3d 199, 201 (5th Cir. 1997). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the employer has met this burden, the plaintiff must then show the employer's asserted reason is merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). The Supreme Court has explained that a plaintiff need only bring enough evidence to enable a jury to disbelieve that an employer's proffered justification truly motivated the adverse action. *Id.* at 147.

Defendant disputes the fourth necessary element of plaintiff's prima facie showing, claiming there is no evidence that someone outside her protected class replaced her. Defendant claims plaintiff's specific position was eliminated, although it concedes to plaintiff's allegation that an existing employee, Mr. Porter, did take on some of her duties. However, defendant asserts that, standing alone, evidence of Mr. Porter assuming some of plaintiff's former duties does not constitute a genuine issue of material fact. Rather, distributing the discharged

employee's duties amongst the existing work force is not a "replacement" under the appropriate legal standard (doc. 23-2, p. 4-5).

In making this argument, defendant cites to a First Circuit case dealing with sex discrimination under the relevant statute, Title VII. *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 423 (1st Cir. 1996). Defendant also cites a number of district court cases in this circuit dealing with ADEA, an age discrimination statute with a similar prima facie test. *Horak v. Glazer's Wholesale Drug Co.*, 2006 WL 2017110 (N.D. Tex. 2006), *Martin v. Bayland, Inc.*, 403 F. Supp. 2d 578 (S.D. Tex. 2005). This court is persuaded by the reasoning in the aforementioned cases and finds that, based on the evidence presented, plaintiff was not replaced within the meaning of Title VII. *See also Dulin v. Dover Elevator Co.*, 139 F.3d 898 (5th Cir. 1998). Plaintiff has also not established that she was treated less favorably than or different from other similarly situated non-pregnant or male employees. *See Lee v. Kansas City South Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009). The employee plaintiff asserts was treated more favorably, Mr. Ward, was not similarly situated with plaintiff. Plaintiff has thus failed to put forth evidence to satisfy the fourth element of her prima facie case under Title VII. As such, defendant is entitled to summary judgment dismissing plaintiff's Title VII claim.

IIED

Plaintiff also claims defendant is liable for intentional infliction of emotional distress (IIED). Under Louisiana law, a plaintiff must show that (1) defendant's conduct was extreme and outrageous, (2) she suffered severe emotional distress, and (3) defendant intended to inflict such distress or knew certainly and substantially that it would result from the conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). The Louisiana Supreme Court has stated that the conduct in question must be so extreme and outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* In the workplace, furthermore, the conduct must amount to a "pattern of deliberate, repeated harassment over a period of time." *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1026-27 (La. 2000).

Although defendant fired plaintiff five weeks before she gave birth to her child and she claims to have suffered severe emotional distress as a result, the central inquiry is whether defendant's conduct meets the high bar for IIED claims established by the Louisiana Supreme Court.

In short, the record does not indicate that G.E.C. management engaged in any conduct toward plaintiff that can be characterized as extreme and outrageous. Summary judgment in favor of defendant is therefore appropriate on plaintiff's IIED claim.

ABUSE OF RIGHTS

Finally, plaintiff alleges the Louisiana law tort of abuse of rights, which is a civilian concept applied only in limited circumstances to avoid burdening the exercise of otherwise legitimate and judicially enforceable rights.[6] To cast a party in damages for exercising a legally-conferred right there must exist (1) no benefit to the person exercising the legal right and (2) damage and injury against whom the legal right is asserted. *Lambert v. Maryland Cas. Co.*, 403 So.2d 739, 757 (La. App. 4th Cir. 1981). The party exercising the right must have a "legitimate and serious interest in its exercise." *Id.*

The right at issue in this case is defendant's right to terminate an "at will" employee. Employment relationships in Louisiana are generally governed by the employment-at-will doctrine, which allows an employer to terminate an at-will employee at any time and without reason as long as it does not violate any constitutional or statutory rights. *See* La. Civ. Code art. 2747. The reasons for the termination need not be accurate, fair, or reasonable and the employer need not state any reason for terminating an employee. *Bell v. Touro*, 785 So.2d 926, 928 (La. Ct. App. 4 Cir. 2001).

Defendant argues that the abuse of rights doctrine is directly at odds with at-will employment doctrine. On the other hand, plaintiff argues the two doctrines

---

[6] "This [abuse of rights] doctrine is typically applied in situations involving the cancellation of insurance coverage. Although the insurer may have the right to modify or cancel the policy, the courts have held public policy considerations may prevent the insurer from exercising this right." *Mixon v. Iberia Surgical, LLC*, 956 So.2d 76, 81 (La. App. 3d Cir. 2007).

12

are not mutually exclusive, especially where there are also allegations of statutory violations stemming from the same adverse act. In this sense, she incorporates her FMLA and Title VII arguments under this claim. It is important to note that Louisiana courts have consistently avoided applying the abuse of rights doctrine in the at-will employment context. The circumstances do not require the court to delineate the appropriate boundaries between the two doctrines.

Turning to the facts of this case, the only question for this court to consider is whether defendant received some legitimate and serious benefit in terminating plaintiff. The answer is clearly yes. As discussed above, even assuming the presence of some retaliatory or discriminatory motivation, the evidence shows that G.E.C. supervisors were seriously concerned about plaintiff's ability to generate revenue for the company and work well with others. As a result, the abuse of rights claim must fail.

Accordingly, defendant's motion (doc. 16) for summary judgment is HEREBY GRANTED and plaintiff's claims against defendant are HEREBY DISMISSED.

Signed in Baton Rouge, Louisiana, on March 16, 2011.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**